## CREEK COAL MINING CO. v. PAPROTTA.

No. 9023—Opinion Filed July 23, 1918.

Rehearing Denied Sept. 24, 1918.

(175 Pac. 235.)

**1. Continuance—Absence of Witness—Affidavit—Sufficiency**

An affidavit for a continuance, grounded on the absence of a material witness, must set forth a statement of facts showing the probability of procuring the evidence of such absent witness; and where it fails to do so, and the trial court overrules the same, its action thereon will not be disturbed on appeal.

**2. Evidence—Opinion Evidence — Physical Condition.**

It is not error to permit a nonexpert witness to express an opinion concerning the physical ability of an injured party to perform labor, where such opinion is based upon facts that are obvious, and does not call for the expression of an opinion arrived at by the process of reasoning and deduction.

**3. Appeal and Error—Rulings on Evidence —Review.**

Where the trial court sustains an objection to a question, such ruling is not open to review by this court in the absence of a record showing the facts to which the witness would testify.

**4. Master and Servant—Injury to Employe —Demurrer to Evidence.**

We have examined the evidence in this case, and are of the opinion the court committed no error in overruling the demurrer interposed thereto.

**5. Trial—Instructions.**

Where improper evidence is received at the instigation of the complaining party, it is not error for the trial court in its instructions to eliminate the same from the consideration of the jury.

**6. Appeal and Error—Instructions—Harmless Error.**

Where the trial court gives erroneous instructions, which are favorable to the complaining party, he is not prejudiced thereby, and the case will not be reversed by reason thereof.

(Syllabus by Springer, C.)

Error from District Court, Okmulgee County; Ernest B. Hughes, Judge.

Action by Gustave Paprotta against the Creek Coal Mining Company. Judgment for plaintiff, and defendant brings error. Affirmed.

W. W. Witten and W. W. Wood, for plaintiff in error

H. R. Christopher, Fred M. Carter, and Malcolm E. Rosser, for defendant in error.

Opinion by SPRINGER, C. This action was instituted in the district court of Okmulgee county by the plaintiff to recover the sum of $15,000 for alleged personal injuries caused by the negligent acts of the "timberman" in prying some stones from the roof of the room, or knocking some props from under the same where the plaintiff was at work, and which fell upon the plaintiff, and thereby produced the injuries of which complaint is made. For answer the defendant filed a general denial and further pleaded contributory negligence. The plaintiff recovered judgment in the lower court for $2,250.

1. The first question presented for our consideration is the action of the court in overruling the motion of the defendant for a continuance upon the grounds of absence of material testimony, which it alleged with due diligence it had been unable to procure. The application for a continuance sets forth the institution of suit on the 23d day of March, 1915, and in its affidavit for a continuance the defendant alleges that one Allen Hayden was a material witness, and that the present whereabouts of the said Hayden is unknown. The application further sets forth that th...

defendant learned that Hayden was located in Oklahoma City, and that about the 1st day of December, 1915, it addressed a letter to said witness in Oklahoma City, which was returned; and that defendant afterwards learned that he was at Oilton, Okla., and addressed a letter to him at that place, which was also returned; and afterwards defendant learned that he was in Joplin, Mo., and addressed a letter to him there, which was returned; and the affidavit concluded by stating that defendant does not know where the present whereabouts of the witness is, but that it believes he may appear in the vicinity of Henryetta for the purpose of procuring work from this defendant or from some of the other mining companies in the country, The case was tried in December, 1916, more than a year after the effort of the defendant to locate the witness, and there was nothing shown which indicated any probability whatever that the witness would be produced or located so his deposition might be taken.

In an application for a continuance on the ground of the absence of a material witness, the showing must recite and set forth the location of the witness, or, if his location is unknown, then the showing must recite and set forth a sufficient state of facts that the court can conclude therefrom the probability of obtaining the testimony of an absent witness; and where the affidavit for a continuance fails to disclose such state of facts, this court cannot say the trial court abused its discretion in overruling the same, and, unless it clearly appears that such is the case, the court will not interfere with the ruling of the lower court thereon. Walton v. Kennamer, 39 Okla. 629, 136 Pac. 584; Hutchings v. Cobble, 30 Okla. 158, 120 Pac. 1013; Keen & DeWade v. Fletcher, 31 Okla. 791, 123 Pac. 842; Walker Bond & Co. v. Purifier, 32 Okla. 844, 124 Pac. 322.

It is next claimed the trial court erred in permitting nonexpert witnesses testifying for plaintiff to answer questions calling for an expression of their opinion concerning the physical condition and ability of plaintiff to perform labor. The authorities are in harmony on the question that, where the injuries are of such a character as to require skilled and professional men to determine the cause and extent of the injuries, the question is one exclusively within the domain of science, and must necessarily be determined by the testimony of men skilled in the science of medicine; but the questions asked the witnesses do not call for an expression of opinion concerning the cause of the injury, but merely to express an opinion

as to the effect of an injury, and upon this question the authorities are somewhat conflicting.

In the case of Parker v. Boston & Hingham Steamboat Co., 109 Mass. 449, the Massachusetts Supreme Court says:

"In an action to recover for personal injuries caused by an accident, the plaintiff's daughter may testify that the plaintiff was decidedly worse at the time of the trial than she was two months after the accident, and could not do so much work as before."

In the case of Partello v. Missouri Pac. Ry. Co., 217 Mo. 645, 117 S. W. 1138, the Missouri Supreme Court says:

"It is claimed by defendant that the trial court committed error in permitting nonexpert witnesses to state their opinions as to plaintiff's state of health before and at the time of her injury. It is well settled by the authorities that a nonexpert witness may give his opinion as to the apparent health of a person whom he has had the opportunity to observe. So may a nonexpert give his opinion in a great variety of cases, when the facts are known to him, and to which he would be competent to testify, would furnish no predicate whatever for the opinion of an expert witness. As a rule, such are confined to questions of identity, and such matters as may be open to the senses, but incapable of exact description. Thus, a nonexpert 'may testify that a person appeared to be suffering, was weak and helpless, appeared sick, looked pale or paler than usual, or was declining in health.' 12 Am. & Eng. Ency. Law (2d Ed.) 491."

Discussing the proposition under consideration here, in case of Louisville & N. R. Co. 128 Ala. 313 29 South. 562, the Supreme Court of the state of Alabama said:

"It was not error to permit a witness who apparently testified from her own knowledge to state that plaintiff was confined to her bed for three weeks immediately after being injured, and that plaintiff had never recovered from her injuries."

This question was before the Supreme Court of the state of Nebraska in the case of Young v. Beveridge, 81 Neb 180, 115 N. W. 766, in which the court said:

"The ability of a person to perform manual labor is not a matter so exclusively within the domain of medical science that witnesses who were acquainted with him, and had opportunity to observe his ability, cannot testify with reference thereto."

This same question was presented to the Supreme Court of Texas in the case of St. L. & S. F. R. Co. v. Smith (Tex. Civ. App.) 90 S. W. 926, and in that case the court said:

"In an action for injuries, it was proper to admit the testimony of a nonexpert witness that plaintiff did not appear 'to be fifty per cent as good a man' as he was before the accident."

This question was also presented to the Supreme Court of Oregon in the case of Crosby v. Portland R. Co., 53 Okla. 496, 100 Pac. 300, 101 Pac 204, wherein it was specifically urged as a ground of reversal that the court had erred in permitting nonexpert witnesses to express their opinion concerning the health of the injured person, and, in disposing of the contention thus raised, the court said:

"In an action for personal injuries claimed to have been caused by an electric shock, testimony of lay witnesses that they were intimately acquainted with plaintiff, and that her health and general physical condition since receiving the shock, as compared with her former appearance, had materially changed, indicating her health to have become impaired, was properly admitted over the objection that the facts testified to were within the exclusive province of the jury, and not proper subjects for opinion evidence of laymen."

In the case of San Antonio Tract. Co. v. Flory, 45 Tex. Civ. App. 233, 100 S. W. 201, the Supreme Court of Texas held:

"The statements of witnesses, testifying in a personal injury action, that the person injured could not, after the accident, lift anything, and that she was crippled, and that it could be seen that she was suffering pain, and that she could not walk very far without resting, were not objectionable as conclusions."

It seems that the testimony of the witnesses of which complaint is made shows they had the means of observing the plaintiff and had known him for some time, and they were testifying merely to what they saw and observed. One of the witnesses testified:

"Well, he was sick off and on; one day he would be around, another day he would be sick; maybe he would be around working two or three days and another day his ears and head would be running and he said he couldn't work, so I hired me a man then; then the last two or three months he was there he kinder worked around a little bit; and that is all I know about it."

It is true that one or two of the witnesses, in answer to the question calling for an expression of their opinion concerning the ability of plaintiff to perform manual labor, testified that in their opinion he was unable to do so. A distinction, however, is to be drawn between this character of testimony, which calls for an expression of opinion where it is based upon facts, and the expression of opinion reached by a process of reasoning and deduction. A nonexpert witness may testify to conclusions where it appears that such testimony is based upon facts. For instance, a nonexpert witness is permitted to express an opinion concerning the sanity of a person where such opinion is based upon matters of fact. The witnesses in this case testified to what they saw, and their testimony shows that they saw the plaintiff both before and after the injury, and the questions called for an expression of opinion concerning the effect and not the cause of the injury; and we think the distinction is well defined, and therefore we think the court committed no error in permitting the witnesses to testify, but we hold that this rule should not be extended any further than to permit a nonexpert witness to testify concerning conclusions that he has drawn from facts that are obvious, and in all cases his opinion must be based on facts.

3. It is next claimed the court erred in sustaining the objection to this question:

"Q. I will ask you, Mr. Hillman, if you have any independent recollections of any sums the Creek Coal Mining Company paid or advanced to the plaintiff, August Paprotta, for his support and maintenance during the time of his illness?"

Unfortunately for the defendant, the court is unable to pass upon this question for the reason that it is not properly presented here for review. The court below sustained the objection to the question, and there is no showing made in the record of what the witness would testify to, and this court is unable to say whether he would have answered the question in the affirmative or in the negative, and therefore the question is not properly before us for review. Jones v. Citizens' State Bank, 39 Okla. 393, 135 Pac. 373; Turner v. Moore, 34 Okla. 1, 127 Pac. 487; Nat. Drill & Mfg. Co. v. Davis, 29 Okla. 625, 120 Pac. 976; Offut v. Wagoner, 30 Okla. 458, 120 Pac. 1018; Muskogee Elec. Tract. Co. v. Staggs, 34 Okla. 161, 125 Pac. 481; Lamont Gas & Oil Co. v. Doop & Frater, 39 Okla. 427, 135 Pac. 392; Evans v. Smith, 50 Okla. 285, 150 Pac. 1096; Gault v. Thurmond, 39 Okla. 673, 136 Pac. 742.

4. It is next claimed that the court erred in overruling the demurrer of the defendant to the evidence. The petition in this case alleges the injuries of plaintiff to be the direct and proximate result of the negligent act of the timberman in prying away stones that were, and had been for some time, loose in the roof of the room in which the plaintiff was at the time working, and the evidence of the plaintiff abundantly supports

the allegations of the petition and the theory of the plaintiff upon which this case was tried.

The plaintiff testified that he was warned to leave the room, and that he started to do so, but that the timberman was prying at the stones, and that his prying caused them to fall on the plaintiff while he was trying to get to a place of safety. The testimony discloses that the stones in the roof had been loose for some little time, and the timberman was sent for to come and repair them by putting in other props. When he arrived at the place where plaintiff was at work and was shown the hanging stones he said: "A. 'You "hunk," you fraid for that little bitty rock,' and he said, 'Give me the bar, I want to hit that'." The bar was handed to him, and before the plaintiff had an opportunity to escape from the place of danger the timberman knocked the props from under the hanging stones or had pried them loose while the plaintiff was attempting to escape, and they fell upon him and inflicted the injuries of . which complaint is made. This is the theory upon which the case was presented to the jury, and, under the pleadings and evidence, we think correctly so, and the court did not err in overruling the demurrer to the evidence.

5. It is next contended that the court erred by giving instruction No. 4, by which it eliminated from the consideration of the jury a provision in a contract between the operators' association and the mine workers, which was introduced in evidence, and which is as follows:

"The price paid for mining the coal is to cover compensation for all other work done necessary to keep the working place in perfect condition for the protection of person and property. * * *"

It is contended by the defendant that there is neither proof nor allegation to show that more than 10 men were working in the mine, so as to bring the cause within the provision of the statute.

The case was tried in the court below by both parties upon the theory that it was governed by the statute. It is not necessary to specifically allege that more than 10 men were employed in the mine, or to plead that the cause is governed by the statute (St. L. & S. F. R. Co. v. Snowden, 48 Okla 115, 149 Pac 1083); but as we view this case, regardless of whether it is one governed by the statute or not, the court did not err in withdrawing from the consideration of the jury the portion of the contract to which reference is made.

At the time the contract was offered in evidence the plaintiff objected to its introduction for the reason that it had not been pleaded, and the court overruled the objection, which it should have sustained. If the defendant desired to rely upon any special agreement it had made with the plaintiff or with the union of which he was a member, in that event it should have pleaded such agreement as a defense, and, having failed to do so, the court should have excluded the contract from the consideration of the jury. Moreover, the plaintiff could not relieve itself by contract from the necessity of furnishing for its employes a safe place within which to work.

The only questions submitted to the jury by the instructions of the court was the negligent acts of the timberman in prying loose the hanging stones, or in knocking away the props which caused them to fall, without giving the plaintiff an opportunity to escape from the place of danger. Thus it will be seen that the case was submitted to the jury upon the theory that the defendant was liable for the negligent acts of a fellow servant; and by section 36, art. 9, of the Constitution of this state, the defendant is powerless to contract in such a way as to relieve itself from liability for injuries resulting from the negligent or careless acts of a fellow servant. St. L. & S. F. Ry. Co. v. Cox, 31 Okla. 444, 122 Pac. 130; C., R. I. & P. R. Co. v. Dennis. 44 Okla. 258, 144 Pac. 368.

6. It is next contended that the court erred by giving instruction No. 5. This instruction. in effect, told the jury that if the timberman warned the plaintiff to seek a place of safety and he failed to do so, that he could not recover unless they further found that the timberman negligently knocked the props from under the roof that they were supporting, or did something else causing the roof to fall, without giving the plaintiff time to reach a place of safety. We have studied this instruction with a great deal of care, and we do not think the court erred by giving it. We are of the opinion that the instruction properly stated the principles of law that should have been submitted to the jury under the evidence and pleadings in this case.

If the timberman warned the plaintiff to seek a place of safety, that fact alone is conclusive evidence that he regarded the place as dangerous, and, it was his duty to wait until the plaintiff had reached a place of safety before doing anything that in any way endangered the plaintiff's life or subjected him to injury.

7. It is next claimed that the court err-

ed by giving instruction No. 7, which is as follows:

"In this connection the jury are instructed that a miner's mere knowledge of the danger of the place in which he works is not conclusive of negligence on his part in failing to avoid. A miner's knowledge, and his voluntary exposure to the danger, are facts which you may take into consideration, from which the ultimate fact of negligence. must be determined; and that the miner exposed himself to dangers which could have been avoided imports negligence only when they are of such a character that a man of ordinary prudence and caution would have refused to have incurred them in the performance of his duties."

We are of opinion that the court erred by giving this instruction, because it is not applicable to the facts or the theory upon which the case was tried; but the giving of this instruction is harmless, because it is more favorable to the defendant than is justified, and we cannot understand why the defendant would reserve an exception to an instruction which is more in its favor than it deserves.

8. It is next contended that the court erred by giving instruction No. 11. By this instruction the court submitted to the jury the question of assumption of risk which is entirely outside of the pleadings and the evidence. The case is limited entirely to the negligence of a fellow servant. The pleadings present that issue and the evidence presents that fact, and the question of assumption of risk had no appropriate place in this case; but this instruction was not one that the defendant could except to, because it is in its favor.

The court by its instructions limited the recovery of the plaintiff to the negligent acts of the timberman in knocking out the props or prying away loose stones, and the question of assumption of risk had no appropriate place in this case. The giving of this instruction, however, affected no substantial rights of the defendant, because it was given for its benefit, and the giving of an erroneous instruction beneficial to the complaining party is not alone sufficient to work a reversal of the case.

Finding no other errors in the record it follows that the judgment of the lower court should be affirmed, and it is so ordered.

By the Court: It is so ordered.